UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ROCHELLE RAMOS,

       Plaintiff,         07 CV 1250 (ADS)

 -against-


COUNTY OF SUFFOLK, SUFFOLK COUNTY SHERIFF'S
OFFICE, ESTATE OF GARY FEINBERG, and ALFRED TISCH,
in his official capacity as Suffolk County Sheriff,

       Defendants.
----------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO SET ASIDE THE VERDICT

Jon L. Norinsberg, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396

# ARGUMENT

## I. THE COURT HAS THE POWER TO SET ASIDE THE VERDICT EGARDLESS OF WHETHER OR NOT A PRIOR RULE 50(A) MOTION WAS MADE.

Defendant argues that the Court is "powerless" to set aside the jury's verdict, because plaintiff never moved for a directed verdict. (Def. Mem. at 4). This, however, is simply *not* the law in this Circuit. Rather, the Second Circuit has repeatedly held that courts *do* have the power to set aside a verdict, even where a party has failed to make a Rule 50(a) motion. See, e.g., Oliveras v. American Export Isbrandentsen Lines, Inc., 431 F.2d 814, 817 (2d Cir. 1970) ("We are of the opinion that where the undisputed evidence results in a verdict that is totally without legal support, justice requires a new trial, *despite counsel's failure to move for a directed verdict prior to the submission of the of case to the jury.*") (emphasis supplied). As the Second Circuit in Oliveras explained:

> To rule that an unintended flaw in procedure bars a deserving litigant from any relief is an unwarranted triumph of form over substance, the kind of triumph which, common place enough prior to our more enlightened days, we strive now to avoid whenever possible.
>
> Oliveras, 431 F.2d at 817.

Following Oliveras, the Second Circuit has repeatedly held that a jury's verdict may be set aside *regardless* of whether or not a party has moved for a directed verdict under Rule 50(a). See, e.g., Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003) ("We recognize an exception to this rule, and may grant judgment as a matter of law where no Rule 50 motion was made, if necessary to prevent "manifest injustice."); Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 129 (2d Cir. 1999) ("We may overlook such a default in order to prevent a manifest injustice in cases where a jury's verdict is wholly without legal support") (internal quotations and citations omitted); Sojak v. Hudson

Waterways Corporation, 590 F.2d 53, 54-5 (2d Cir. 1978) ("Plaintiff did not move for a directed verdict pursuant to Rule 50(a) .... However, we are not powerless to grant relief. Where a jury's verdict is wholly without legal support, we will order a new trial to prevent a manifest injustice."). See also McGuigan, v. CAE Link Corp., 851 F.Supp. 511, 512 (N.D.N.Y. 1994) ("despite this general requirement and the rationale supporting it, the court may consider a Rule 50(b) motion in cases where no directed verdict motion was made if it is necessary to prevent 'manifest injustice'") (quoting Gilbeau v. Nellis, 18 F.3d 107 (2d Cir. 1994)).

In this case, it is true that plaintiff's counsel did not move for a directed verdict at the close of plaintiff's case, or at the close of evidence. However, as the record makes clear, plaintiff's counsel failed to do so because he – mistakenly – focused solely on the Monell claims when deciding not to make a motion under Rule 50(a). See, e.g., Flynn Decl., Ex. I ("This case is full of factual issues that *the Court had identified in denying summary judgment .... Those factual issues* clearly must be resolved by a jury") (emphasis supplied). Thus, plaintiff's counsel was clearly referring to plaintiff's Monell claims, as the Court had not "identified" the issue of whether or not Ms. Ramos had been sexually assaulted as a basis for denying summary judgment (defendants had already conceded this issue in their Rule 56.1 statement). Since the Court had already ruled that there were material factual disputes regarding plaintiff's Monell claims (Docket Entry 62) – and since the proof at trial was substantially the same as that which had been presented on the motion – plaintiff's counsel believed that it would not be possible to win a directed verdict on plaintiff's Monell claims.

In retrospect, however, it is clear that plaintiff's counsel *should* have moved for a directed verdict on the limited issue as to whether or not Ms. Ramos had been sexually assaulted. Notwithstanding counsel's failure to do so, however, it is respectfully submitted that the Court has

the power to set aside the verdict under the Second Circuit cases cited above. As the Oliveras Court stated, "[t]o rule that an unintended flaw in procedure bars a deserving litigant from any relief is an unwarranted triumph of form over substance." Oliveras, 431 F.2d at 817.

In this case, it would truly be a "manifest injustice" to allow this verdict to stand. As the Court noted immediately after the verdict – when the evidence was still fresh in everyone's mind:

> There has been *no evidence* adduced, in my view, contrary to the testimony of the plaintiff that she was sexually abused by physician's assistant Gary Feinberg .... [Therefore], I think that this may be a case where there's a complete absence of evidence [supporting the verdict], or where there's such an *overwhelming amount of evidence in support of the plaintiff* that fair-minded jurors could not reasonably arrive at a verdict in favor of the defendant.

Tr. at 1467-8 (emphasis supplied) (Norinsberg Decl., Ex. O).

It is respectfully submitted that the Court's first impression of the verdict was exactly right. There simply *was* no basis for the jury to reach the conclusion that it did. In essence, the jury disregarded an overwhelming amount of evidence in plaintiff's favor, and reached a conclusion that had no basis in fact or logic whatsoever.

The strained arguments offered by defense counsel in support of the jury's verdict merely reinforce this point. For example, defendants attempt to justify the jury's verdict by pointing to the "crowded and cramped conditions in the unit", which would "make it unlikely that an unwanted sexual assault could go undetected." (Def. Mem. at 6). Yet, according to defendants' *own investigation* – as conducted by the Internal Affairs Section and the Criminal Investigation Bureau – that is exactly what happened! Indeed, it will be recalled that the Internal Affairs Section deemed plaintiff's complaint to be "FOUNDED." Further, after interviewing Ms. Ramos, Investigator Starke was about to charge Feinberg with four separate counts of sexual abuse (Ex. 38) – in addition to the

sixteen counts of sexual abuse and five counts of official misconduct that he had already filed – based on the *exact same evidence* which defense counsel now suggests is unworthy of belief.

Defendants also suggest – incredibly – that the jury's verdict may have been based upon the fact that plaintiff "brought in absolutely no corroborating evidence" of her prior employment. (Def. Mem. at 7). This argument, however, is completely specious. As noted in plaintiff's original moving papers, there was *no lost earnings claim* in this action. In fact, plaintiff specifically told the jury that she was on disability and that such disability was *not* because of this incident. Thus, it is completely disingenuous – if not blatantly misleading – to suggest now that plaintiff "affirmatively put her work history into issue" by simply telling the jury about her background. (Def. Mem. at 7).

In truth, defendants have been forced to make such strained arguments simply because there is *no* evidence which supports the jury's decision in this case. This verdict was truly inexplicable. There was nothing in the testimony of Ms. Ramos – who was impeached only *once* during her entire cross-examination – that would lead a reasonable, fair-minded juror to conclude that she had manufactured her claims against Feinberg. Accordingly, plaintiff respectfully requests that the Court exercise its power and set aside the jury's verdict under Rule 50(b) on the grounds that it is a "manifest injustice." See Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003); Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 129 (2d Cir. 1999); Sojak v. Hudson Waterways Corporation, 590 F.2d 53, 54-5 (2d Cir. 1978).

## II. A NEW TRIAL SHOULD BE ORDERED UNDER RULE 59.

### A. Defendants' Excuses For Violating The Court's Pre-Trial Rulings Are Completely Pretextual And Should Be Rejected by The Court.

In opposing plaintiff's motion for a new trial, defendants have offered a myriad of excuses in an attempt to justify their blatant violation of the Court's pre-trial rulings. None of these excuses,

however, hold water.

### i. The June 2009 Arrest.

Defendants claim that they had a right to ask plaintiff about the facts of her June 2009 arrest – which the Court had repeatedly and emphatically instructed them *not* to do – merely because "plaintiff introduced into evidence the sworn statement that plaintiff had provided to the Nassau County Sheriff's Department." (Def. Mem. at 10) This argument is preposterous. Plaintiff had every right to put this document into evidence, as it was the *only* contemporaneous evidence available to prove that she had, in fact, reported the incident to authorities. More importantly, however, the Court had explicitly told defendants that they could *not* inquire about the reasons for this arrest, *period*. ("I am telling you now, you are not to go into the reason for the arrest. Is that clear? .... Absolutely do not go into what she arrested for because that's not a conviction."). The Court did not say that defendants *might* be able to use this arrest, depending on what evidence is adduced at trial. Rather, the Court issued a blanket ruling which expressly prohibited defense counsel from asking about this arrest. Thus, it was entirely improper for defendants to pursue this line of questioning in the first place.

But even more egregious than simply asking about the June 2009 arrest was defense counsel's use of this ill-gotten "evidence" in her closing argument. Despite the Court's repeated admonitions that plaintiff's arrest history was relevant *only* for the issue of damages, defense counsel used the facts of the 2009 arrest for precisely the opposite purpose – to attack plaintiff's credibility, i.e., to suggest that plaintiff was a habitual liar, and was therefore lying about the sexual assault as well:

> **Well, you know what we know about Ms. Ramos? She's a person who files false statements with the police.** She walked into a police station not long ago and filed

-5-

a false report about being robbed, and it was not true."

Tr at 1380, Ex. M (emphasis supplied).

Most disturbing of all, however, was the fact that Ms. Ramos had *never* answered the questions posed to her regarding this arrest, which defendants concede in their opposition papers. See Def. Mem. at 10 ("the trial transcript does not indicate that plaintiff answered the question posed to her."). Thus, there was *no* evidence whatsoever in the record to support this claim. Rather, defense counsel's *question* was the only "evidence" in support of this grossly improper argument.

      ii.    **Plaintiff's Drug History.**

Defendants once again attempt to justify their flagrant violation of the Court's rulings by creating an artificial distinction between, on the one hand, the Court's ruling "prior to trial", and on the other, the Court's rulings "during trial." (Def. Mem. at 11-12). What defendants fail to mention, however, is that the Court specifically told them – in absolute, explicit terms – that they were required to *ask the Court's permission* before getting into this area during trial:

> I'm warning defense not to bring it up in opening or cross-examination, **until they speak to me about it.** I have real problems with this drug dependency. I think it is unfairly prejudicial under Rule 403.

Tr. at 20-21, Ex. L (emphasis supplied).

Yet, despite these explicit instructions, defense counsel did *not* "speak to [the Court] about it" first before asking about plaintiff's drug history. Instead, defense counsel simply plunged ahead into this line of questioning, completely disregarding the Court's directive on this issue.

The fact that the Court overruled the objection when it was made "during trial" misses the point. These questions should never have been asked *in the first place*. The Court had heard

extensive arguments from both sides, and had already ruled on this issue. If the rule were such as suggested by defense counsel – that a party could simply disregard a Court's instructions on a motion *in limine*, and hope that the Court would reverse itself ruling "during trial"(Def. Mem. at 12) – than there would be no point whatsoever in making motions *in limine*. It would essentially defeat the whole purpose of making such a motion, since the ruling could be challenged at any time simply by asking questions which had already been determined to be improper. It is respectfully submitted that such a rule would fundamentally contravene the Court's role as a "gatekeeper" at trial – deciding which evidence to admit and which evidence to exclude – and would also completely obliterate FRE 403. Accordingly, defense counsel's violation of the Court's pre-trial rulings in this case should not be permitted, and a new trial should be ordered.

### iii. The "Conspiracy Theory".

Defendants argue that there was "sufficient evidence in the case to suggest to the jury that Ms. Rickenbacker and Ms. Ramos had crossed paths." (Def. Mem. at 8). Once again, however, defendants' argument misses the point. The issue is *not* whether these two women had "crossed paths" – which, in itself, is a highly dubious proposition – but rather, whether they had *conspired together* to make up a claim against Feinberg. This is an entirely separate proposition, and one for which there is absolutely *no evidence in the record*. To the contrary, as noted in plaintiff's original motion, Ms. Ramos had *no motive* to make up the allegations against Feinberg, as she was *already out of jail* at the time when she met with Investigator Starke on March 17, 2006, and told him that she was "adamant" about pursing criminal charges. (Starke Tr., Nov. 17, 2009). Thus, defendants' "conspiracy theory" is the height of rank and utterly baseless speculation, having no evidentiary foundation whatsoever. Given the complete absence of evidence on this claim, it was thus improper

for defense counsel to invite the jury to engage in "sheer surmise and conjecture. " Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005). Accordingly, a new trial should be ordered on this ground.

### iv. The Judicial Admission.

Defendants argue that their admission that the sexual assault occurred was only "for purposes of the motion" (Def. Mem. at 12). This argument, however, is belied by the plain wording of Local Rule 56.1. Under Local Rule 56.1, the moving party must set forth "material facts as to which the moving party contends *there is no genuine issue to be tried*." (Id.) (emphasis supplied). Thus, the Rule expressly requires the moving party to identify those issues which do not need be "tried", i.e., proceed to trial.

In their Local Rule 56.1 statement, defendants asserted as a "material fact" for which there was no "genuine issue to be tried" as follows:

> On or about December 28, 2005, *Ramos was subjected to a sexual assault by Gary Feinberg*, who was working as a Physician's Assistant in the Medical Unit at the jail.

Id., ¶ 3 (emphasis supplied).

Thus, defendants affirmatively removed this issue from this case. To now argue that this was merely "for purposes of the motion" is simply disingenuous. (Def. Mem. at 12). There is no such qualifying language in Local Rule 56.1. Indeed, if the situation had been in reverse – and plaintiff had failed to respond to an allegation which defendants claimed was not in dispute – then undoubtedly defendants would have argued (correctly) that such a failure was a binding admission against plaintiff. See Gubitosi v. Kapica, 154 F.3d 30, 31, n.1 (2d Cir. 1998) (deeming admitted all material facts contained in an unopposed Rule 56.1 statement). Lastly, defendants' have wholly

-8-

failed to address the issue of prejudice. While it is true that a party can make a motion to withdraw an admission, defendants' never made such motion prior to trial. Indeed, it was not until one of the Court's law clerks read the proposed summary of the case for the jury – which explicitly embodied defendants' Rule 56.1 concession that the sexual assault was *not* in dispute – that defendants' chose to raise this issue with the Court for the first time.

As set forth in plaintiff's original motion, however, this last-minute change in position significantly prejudiced plaintiff. Most importantly, it prevented plaintiff from calling a witness from the Nassau County Sheriff's Office – Investigator Terry-Clark – to lay a foundation for the complete investigative file relating to Ms. Ramos (*including medical records*). Up until that point, there had been no *need* to call Ms. Terry-Clark, because plaintiff's counsel reasonably believed that the *only* issues to be decided by the jury would be plaintiff's Monell claims against Suffolk County.

After successfully blocking Ms. Terry-Clark from testifying, however, defendants now argue – incredibly – that "plaintiff did not did not put into evidence the records of the Nassau County Medical Center." (Def. Mem. at 7). Yet, this argument merely underscores the prejudice which was suffered by plaintiff. The inability of plaintiff to present corroborating evidence – due entirely to defendants' last-minute change in position – was undoubtedly harmful to plaintiff's case. It is therefore respectfully submitted that defendants' original statement in Local Rule 56.1 should have been deemed binding, and defendants should not have had the right to contest this issue at trial. See Hoodho v. Holder, 558 F.3d 184, 191 (2d Cir. 2009) ("Facts admitted by a party are judicial admissions that bind that party through the litigation.") (internal quotations and citations omitted). For this reason, as well as those previously advanced, it is respectfully requested that the Court order a new trial under Rule 59.

matter of law in favor of plaintiff on the issue of whether or not she was sexually assaulted, or in the alternative, ordering a new trial on this issue pursuant to Fed. R. Civ. P. 59.

Dated: New York, New York
January 20, 2010

Respectfully submitted,

Jon L. Norinsberg (JN-2133)